ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: |
| DATE FILED: SEP 1 9 2007 |

MARIE FLAHERTY,

                    Plaintiff,

        -v-                                      No. 03 Civ. 2167 (LTS)(HBP)

JASON FILARDI,GEORGE N. TOBIA, JR., BURNS
AND LEVINSON, LLP, HYDE PARK ENTERTAINMENT,
ASHOK AMRITRAJ, DAVID HOBERMAN, TODD
LIEBERMAN, WALT DISNEY COMPANY, BUENA
VISTA MOTION PICTURES COMPANY, TOUCHSTONE
PICTURES, BUNGALOW 78 PRODUCTIONS, THE
KUSHNER-LOCKE COMPANY, MEESPIERSON FILM CV,
WMG FILM, JANE BARTELME, COOKIE CAROSELLA,
DANA OWENS d/b/a/ QUEEN LATIFAH, 7th CAVALRY
PRODUCTIONS, INC., BIG HOUSE PRODUCTIONS,
INC., THE WRITERS GUILD OF AMERICA, WEST,
PETER FILARDI, WALT DISNEY ENTERPRISES
and DOES 6 THROUGH 10, inclusive,

                    Defendants.

---

## OPINION AND ORDER (INCLUDING ORDER FOR SUPPLEMENTAL BRIEFING)

APPEARANCES:

MARIE FLAHERTY, ESQ.
1 Stuyvesant Oval, #12G
New York, New York 10009

*Plaintiff Pro Se*

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
  By: Jeffrey A. Conciatori, Esq.
  335 Madison Avenue, 17th Floor
  New York, New York 10017

*Attorneys for the Disney and Big House
Defendants*

SHERIN AND LOGIN, LLP
  By: Robert J. Muldoon, Jr., Esq.
  101 Federal Street
  Boston, Massachusetts 02110

*Attorneys for the B&L Defendants*

KENNEDY, JENNIK & MURRAY, PC
  By: Susan M. Jennik, Esq.
  113 University Place, 7th Floor
  New York, New York 10003

*Attorneys for Defendant Writer's Guild*

Copies picked up by counsel for Disney & Big House; Writer's guild;
Copies mailed to counsel for B&L As
Chambers of Judge Swain

LAURA TAYLOR SWAIN, U.S.D.J.

Plaintiff Marie Flaherty ("Plaintiff" or "Flaherty"), appearing pro se, brings this action, alleging principally that Defendants Jason Filardi, George N. Tobia, Jr., Esq. ("Tobia"), Burns and Levinson, LLP ("B&L"), Hyde Park Entertainment ("Hyde Park"), Ashok Amritraj ("Amritraj"), David Hoberman ("Hoberman"), Todd Lieberman ("Lieberman"), the Walt Disney Company ("Disney"), Buena Vista Motion Pictures Group ("Buena Vista"), Touchstone Pictures ("Touchstone"), Bungalow 78 Productions ("Bungalow 78"), the Kushner-Locke Company ("Kushner-Locke"), Meespierson Film CV ("Meespierson"), WMG Film ("WMG"), Jane Bartelme ("Bartelme"), Cookie Carosella ("Carosella"), Dana Owens d/b/a Queen Latifah ("Owens"), 7th Calvalry Productions, Inc. ("7th Calvalry), Big House Productions, Inc. ("Big House"), Peter Filardi, Writer's Guild of America West (the "Guild"), Walt Disney Enterprises, Inc. ("Disney Enterprises"), and Does 6-10 (collectively, "Defendants") infringed Plaintiff's copyright in her screenplay, "Amoral Dilemma," in creating the movie "Bringing Down the House," in violation of 17 U.S.C. § 101 et seq.

This Opinion and Order addresses the following motions. Defendants Disney, Buena Vista, Touchstone, Hyde Park, Jason Filardi, Amritraj, Hoberman, Lieberman and Owens (collectively, the "Disney Defendants") move for summary judgment. Defendants Tobia and B&L (collectively, the "B&L Defendants") and Big House, Disney Enterprises, and 7th Calvalry (collectively, the "Big House Defendants") have joined the Disney Defendants' motion. Also before the Court are a separate summary judgment motion by the B&L Defendants and a motion by the Big House Defendants for judgment on the pleadings or, in the alternative, summary

judgment.

The Court has subject matter jurisdiction of Plaintiff's copyright and Lanham Act claims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1338(b), and of the various state law claims pursuant to 28 U.S.C. § 1367.

The Court has considered carefully all of the submissions made in connection with these matters. The pending motions are resolved as follows. The Disney Defendants' and the B&L Defendants' motions for summary judgment are granted in part but, to the extent they seek summary judgment regarding Plaintiff's claim that Defendants Filardi and Tobia initially sold the film production defendants a work ("Jailbabe.com") that infringed on Plaintiff's screenplay, they will be held in abeyance pending further submissions. The Big House Defendants' Motion for Judgment on the Pleadings is denied as moot, because the Disney Defendants' summary judgment motion, in which the Big House Defendants joined, has been granted in relevant part.

Because discovery in this action has been completed and the record on these motions is unclear as to the content of the "Jailbabe.com" work that was sold, the parties will be given an opportunity to supplement the record on this issue and, as noted above, this element of the motion practice will be held in abeyance pending the Court's receipt of the further submissions. A schedule for the submissions is set forth in the penultimate paragraph of this Opinion and Order.

By a separate Order to Show Cause, issued contemporaneously herewith, Plaintiff will be directed to show cause as to why all remaining claims against the defendants who did not join in these motions should not be dismissed in light of the Court's determinations on the merits

of Plaintiff's claims as set forth in Flaherty v. Filardi, 388 F. Supp. 2d 274 (S.D.N.Y. 2005) and in this Opinion.

## BACKGROUND

Familiarity with the background of the instant case, which is detailed in the Court's September 14, 2005 decision, is presumed. See Flaherty v. Filardi, 388 F. Supp. 2d 274 (S.D.N.Y. 2005). In that decision, the Court granted partial summary judgment to the moving defendants, dismissing all of Plaintiff's copyright claims to the extent they were premised on alleged similarities between Plaintiff's screenplay and the finished film "Bringing Down the House." That decision also dismissed Plaintiff's Lanham Act claim insofar as it asserted that defendants had falsely designated the origin of the finished film. Finally, the decision dismissed several of the Plaintiff's related state law claims on preemption grounds to the extent they were premised on rights protected by the Copyright Act.

Subsequent to the briefing on the summary judgment motions at issue, Plaintiff sought, and was granted, permission to file a Second Amended Complaint ("Complaint" or "SAC") that asserted the relevant remaining claims against five new Defendants, corrected the name of the Walt Disney Company, and referred to what Plaintiff characterizes as the subsequent registered derivative work "Amoral Dilemma." In the Order granting Plaintiff's request to amend, she was specifically prohibited from asserting in the SAC any federal claims premised on similarity between her screenplay(s) and the finished motion picture "Bringing Down the House" or authorship of the finished motion picture "Bringing Down the House," as those claims had already been dismissed by a previous Order, and reconsideration of that Order had been denied.

<u>See</u> January 24, 2007, Opinion and Order. To the extent Plaintiff's Second Amended Complaint asserts any such claims, the pleading is ineffective to revive them.

The Disney Defendants move for summary judgment dismissing all of Plaintiff's remaining claims against them, namely her copyright infringement, Lanham Act and state claims relating to the draft screenplays prepared after the film production defendants had acquired a screenplay purportedly authored by Defendant Filardi.[1]  The B&L Defendants move for summary judgment dismissing all of Plaintiff's claims against them, including Plaintiff's malpractice, breach of fiduciary duty, misappropriation of idea, breach of contract, unfair competition, fraud, and conversion claims.

## DISCUSSION

Summary judgment is appropriate only when the submissions of the parties, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the Court must "view the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in its favor." <u>Am. Cas. Co. v. Nordic Leasing, Inc.</u>, 42 F.3d 725, 728 (2d Cir. 1994).

Nevertheless, to defeat a motion for summary judgment, "[o]nce the moving party has come forward with support in the form of the pleadings, depositions, interrogatory answers, admissions or affidavits that no genuine issue of material fact remains to be tried, the opposing

---

[1]  As noted above, the B&L and Big House Defendants have joined in the Disney Defendants' motion.

party has the burden of providing similar support setting forth specific facts about which a genuine triable issue remains." Borthwick v. First Georgetown Sec., Inc., 892 F.2d 178, 181 (2d Cir. 1989). A party opposing a motion for summary judgment "may not rest on the pleadings but must further set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions showing a genuine issue exists for trial." Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996); see also Fed. R. Civ. P. 56 (c) and (e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

## A.    Plaintiff's Rule 56(f) Request

Plaintiff's response to the motions for summary judgment includes an affirmation, purportedly pursuant to Federal Rule of Civil Procedure 56(f), in which Plaintiff argues that she is in need of further discovery before she can respond to these motions. Federal Rule of Civil Procedure 56(f) provides that, "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

Plaintiff acknowledges that her Rule 56(f) affirmation is "nearly verbatim to her October 6, 2006 Motion for Default Judgment." (Rule 56(f) Affirmation of Marie Flaherty in Opposition to Defendants' Motions for Summary Judgment.) For substantially the same reasons that Judge Pitman articulated in denying Plaintiff's admittedly identical motion for default judgment, this Court denies Plaintiff's Rule 56(f) application.

B.      Disney Defendants' Motion for Summary Judgment

        1.      *Remaining Copyright Claims*

        In Claims 1-4 of the SAC, Plaintiff alleges that the approximately 14 prior drafts
of "Bringing Down the House" "constitute compilations, dramatizations, performances,
derivations and publications" of her screenplay and thus violate her rights under the Copyright
Act. (Compl. ¶ 114.)  She also alleges that it was her screenplay that was pitched by Filardi to
Defendant Hyde Park in March of 2000.  (Id. ¶ 67.)

        The Disney Defendants seek summary judgment in their favor on Plaintiff's
remaining copyright claims. They argue that all of the remaining copyright infringement claims
must be dismissed as a matter of law, as interim drafts of a published non-infringing final work
are not actionable under the Copyright Act and, in any event, Plaintiff has failed to identify
substantial similarities between her screenplay and the draft screenplays. Defendants further
argue that Plaintiff cannot establish that the Defendants had access to her screenplay, and cannot
rebut Defendants' uncontroverted evidence of independent creation.  Plaintiff does not respond to
Defendants' legal argument that interim drafts of a published non-infringing final work are not
actionable under the Copyright Act. That principle is, however, key to the resolution of the
question of viability of Plaintiff's copyright claims concerning the content of drafts that were
prepared in the course of development of the film.

        As other courts in this district have held, "[s]ince the ultimate test of infringement
must be the film as produced and broadcast, we do not consider the preliminary scripts." Davis
v. United Artists, Inc., 547 F. Supp. 722, 724 n.9 (S.D.N.Y. 1982).  "In determining copyright

infringement, . . . [t]he Court considers the works as they were presented to the public." Walker
v. Time Life Films, Inc., 615 F. Supp. 430, 434 (S.D.N.Y. 1985) (internal citation omitted).
"Courts have routinely rejected requests to consider earlier drafts of the screenplay.
Consideration of earlier versions of the screenplay is too unreliable in determining substantial
similarity." Id. at 435. Accordingly, because the finished film "Bringing Down the House" is
not an infringing work,[2] the drafts prepared in the course of film development and production
constitute interim drafts of a published non-infringing final work, and are not actionable under
the Copyright Act. The Disney, B&L and Big House Defendants are therefore entitled to
summary judgment as a matter of law on the remaining copyright infringement claims premised
on the notion that drafts of "Bringing Down the House" prepared during the film development
and production process, including "Suburban Sista" and "In the Houze," infringed on her idea or
screenplay.

    To the extent defendants Filardi and Tobia are, however, moving for summary
judgment in their favor as to Plaintiff's claim that they initially sold film production defendant
Hyde Park a screenplay that infringed on Plaintiff's intellectual property rights, they have failed
to demonstrate on this record their entitlement to such judgment as a matter of law. There
appears to be no dispute that this initial screenplay was a work titled "Jailbabe.com" and
purportedly written by Filardi. Plaintiff alleges, as noted above, that Filardi initially pitched her
screenplay to the Defendants, and thus appears to be alleging that "Jailbabe.com" infringed on
her screenplay. Although, for the reasons stated above, the interim drafts of the finished motion
picture are not actionable, there remains a genuine issue of fact precluding summary judgment on

  [2]  See Flaherty v. Filardi, 388 F. Supp. 2d 274 (S.D.N.Y. 2005).

Plaintiff's claim that Filardi violated her rights by selling the allegedly infringing screenplay to the film production defendants in exchange for a "mid-six figure paycheck" and a three-picture deal with Hyde Park. Plaintiff also asserts claims against Defendant Tobia under the same theory, alleging that Tobia provided Filardi with access to Plaintiff's screenplay and negotiated the sale on his behalf. (Compl. ¶ 128.)

Although Defendants have proffered evidence of independent creation of a work titled "Jailbabe.com" (see November 15, 2005 Dep. of Jason Filardi at 113-116) and both parties have proffered arguments concerning the similarity (or lack thereof) to "Amoral Dilemma" of a version of "Jailbabe.com" that is in the record,[3] there is no clear, competent evidence in the record as to what document Filardi originally sold to the film production defendants. In the interests of judicial economy and the prompt resolution of this remaining aspect of the motion practice, the Court will give the parties an opportunity to make further submissions addressing this evidentiary question. In that discovery has already been completed, each side is in a position to proffer whatever evidence it would present at trial concerning the identity and content of the document in question. The summary judgment motions will be held in abeyance solely to the extent they relate to Plaintiff's claims against Defendants Filardi and Tobia concerning the sale of "Jailbabe.com."

2.    *Remaining Lanham Act Claims*

The Disney Defendants, citing Dastar Corp. v. Twentieth Century Fox Film Corp.,

---

[3]    See Exh. H to Aff. of Jeffery Conciatori. Although the Conciatori affidavit purports to attest to the document as a true and correct copy of "Jailbabe.com," this attorney's affidavit is insufficient to authenticate it as an evidentiary matter, nor does the Conciatori affidavit nor any other evidentiary proffer by any party identify it specifically as the work that Filardi sold to Hyde Park.

539 U.S. 23 (2003), contend that they are also entitled to summary judgment with respect to

Plaintiff's remaining Lanham Act claim (Claim 5 of the SAC), arguing that the protections of

Section 43 of the Lanham Act do not extend to any idea, concept or communication embodied in

a tangible good, and thus no Lanham Act claim can lie as to the drafts prepared in the course of

development and production of "Bringing Down the House." Plaintiff argues (without providing

a citation to her Complaint) that Dastar is inapplicable, as her Complaint "explicitly states that

the *screenplays* that Def. Tobia and Filardi put into commerce violated Plaintiffs [sic] rights

under the Lanham Act." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motions

for Summary Judgment, 29) (emphasis in original.)

The Supreme Court held in Dastar that the Lanham Act protects only "the

producer of the tangible goods that are offered for sale, and not . . . the author of any idea,

concept, or communication embodied in those goods." Dastar, 539 U.S. at 37. As another court

in this district made clear, an alleged author of a screenplay embodied in a tangible good offered

for sale is not the originator of the film and thus is not protected by the Lanham Act. See Smith

v. New Line Cinema, No. 03 Civ. 5274(DC), 2004 WL 2049232, at *3-4 (S.D.N.Y. Sept. 13,

2004). It is undisputed that Plaintiff was not, in this sense, the originator of the film.

Accordingly, the Disney, B&L and Big House Defendants are entitled to summary judgment as a

matter of law on Plaintiff's remaining Lanham Act claims, insofar as they relate to the finished

film.

For substantially the reasons outlined in the preceding section of this Opinion,

however, the question of the viability of any Lanham Act claim premised on Plaintiff's assertion

that Filardi and Tobia sold her screenplay, in the guise of Filardi's "Jailbabe.com," to the film

production defendants cannot be resolved on this record and must await the parties' further submissions.

### 3.    *Plaintiff's Remaining State Law Claims*

The Disney Defendants argue that they are entitled to summary judgment dismissing Plaintiff's remaining state law claims against them, namely claims for unfair competition, unjust enrichment and quantum meruit to the extent those claims are premised on the alleged misappropriation or theft of Plaintiff's original ideas and concepts, because, inter alia, her "idea" is embodied in her screenplay and her claims are thus preempted.

In response to an interrogatory served by the Defendants seeking Plaintiff's identification of any "ideas" or "concepts" she believed to have been misappropriated by Defendants, Plaintiff wrote that "the confidential and proprietary original ideas and concepts concern two friends, unlucky in love, who vent their sexual frustration by corresponding with a prisoner that they find online." (Plaintiff's Response to Defendants Permitted Contention Interrogatory, dated November 28, 2005, attached as Ex. R to the Declaration of Jeffrey A. Conciatori in Support of Defendants' Motion for Summary Judgment ("Conciatori Decl.").) Plaintiff subsequently confirmed in her deposition that her "Amoral Dilemma" screenplay was the expression of this idea. (January 30, 2006 Deposition of Plaintiff Flaherty ("Flaherty Dep."), attached as Ex. N. To Conciatori Decl., at 20:17-22:3.)

As this Court noted in its September 14, 2005, Opinion and Order, a state law claim is preempted by the Copyright Act where (1) the work to which the claim is applied falls within the scope of works protected by sections 102 or 103 of the Copyright Act, and (2) the claim addresses legal or equitable rights already protected by copyright law. See Flaherty, 388 F.

Supp. 2d at 290. Because discovery subsequent to the Court's earlier ruling has established, by

Plaintiff's own admission, that her "idea" is, essentially, embodied in her screenplay, her state

law misappropriation claims are preempted by the Copyright Act. See Katz Dochrermann &

Epstein, Inc. v. Home Box Office, No. 97 Civ. 7763(TPG), 1999 WL 179603, at *3 (S.D.N.Y.

Mar. 31,1999) (holding that where the ideas at issue cannot, on the facts alleged, be meaningfully

separated from their tangible expressions, preemption is appropriate.) Thus, the Disney, B&L

and Big House Defendants Defendants are all entitled to summary judgment dismissing

Plaintiff's claims for unfair competition, unjust enrichment and quantum meruit.

### 4.    *Remaining Fraud Claim*

The Disney Defendants argue that Defendant Jason Filardi is entitled to summary

judgment as a matter of law dismissing Plaintiff's New York state law fraud claim against him

(SAC Claim 12), because Plaintiff is unable to identify any statements made by Defendant Jason

Filardi on which she relied to her detriment. To state a cognizable fraud claim under New York

law, a plaintiff must allege (i) a misrepresentation or omission of a material fact; (ii) which was

false and known to be false by defendant; (iii) made for the purpose of inducing plaintiff to rely

on it; (iv) justifiable and reasonable reliance on the material misrepresentation or omission; and

(v) resulting injury. See Stewart v. World Wrestling Federation Entertainment, Inc., No. 03 Civ.

2468 RLC, 2005 WL 66890, at *6 (S.D.N.Y. Jan. 11, 2005). Because Plaintiff has failed to

identify any statements, let alone false statements, made by Defendant Jason Filardi upon which

Plaintiff relied, he is entitled to summary judgment as a matter of law on her fraud claim. To the

extent Plaintiff's fraud claim against Filardi is premised on his alleged collaboration with Tobia

in a misrepresentation as to any similarity between Plaintiff's screenplay and "Jailbabe.com," the

claim fails for the reasons set forth in Section C.3 below.

## C.     B&L Defendants' Motion for Summary Judgment

### 1.     *Preemption: Misappropriation of Idea and Conversion Claims*

The B&L Defendants ask the Court to grant them summary judgment dismissing

Plaintiff's state law claims against them, namely for legal malpractice, breach of fiduciary duty,

misappropriation of idea, breach of implied contract, unfair competition, fraud, quantum meruit,

unjust enrichment and conversion. The B&L Defendants argue that these claims are preempted

by the Copyright Act. For the reasons explained above, Plaintiff's claims for unfair competition,

quantum meruit, and unjust enrichment are preempted and thus are not viable. For substantially

the same reasons, the B&L Defendants' motion for summary judgment is granted as to Plaintiff's

misappropriation of idea and conversion claims. Both of these claims are rooted in Plaintiff's

allegation that the B&L Defendants improperly shared her "idea" with others,[4] and thus are

preempted for the reasons discussed above.

To the extent Plaintiff's misappropriation claim can be construed as premised on a

---

[4]     Plaintiff's misappropriation of idea claim (claim 8 of the SAC) charges that
Plaintiff and Tobia entered into a confidential and fiduciary relationship and that
Tobia legally represented Plaintiff. For the reasons discussed in section C.2
below, summary judgment is granted dismissing Plaintiff's fiduciary relationship
and legal malpractice claims. The misappropriation of idea claim also alleges that
the Defendants disclosed without Plaintiff's authorization her "unique and
original idea" and did not compensate her for this. See SAC ¶¶183-192.
Plaintiff's conversion claim (claim 13 of the SAC) charges that Defendants
wrongfully appropriated and disclosed Plaintiff's ideas and concepts. See SAC ¶¶
239-248. As these claims thus clearly arise from Plaintiff's contention that her
ideas – which were allegedly embodied in her screenplay – were misappropriated,
they are preempted by the Copyright Act.

contractual theory rather than a general claim of entitlement to protection of her intellectual property rights, it fails on the merits. As the Second Circuit has noted, "[u]nder California law, ... misappropriation ... claims are actionable only to vindicate legally protected property interests, and an idea is not recognized as a property right. ... Recovery for the appropriation of an idea, therefore, may be had only on a contractual theory." Whitfield v. Lear, 751 F.2d 90, 92 (2d Cir. 1984). There is no allegation, or any proffer of evidence of any contract (implied, express or otherwise) between Plaintiff and any of the Defendants, other than Tobia/B&L. Plaintiff's contract claims against Tobia and his firm are not viable, as explained below. Accordingly, Plaintiff's misappropriation of idea claim fails on its merits even if it is not preempted.

2. *Legal Malpractice, Breach of Fiduciary Duty, and Breach of Contract Claims*

The parties agree that Massachusetts law governs Plaintiff's legal malpractice, breach of fiduciary duty, and breach of contract/implied contract claims against Tobia and his firm. Under Massachusetts law, where the parties never entered into an express contract for legal services, an attorney-client relationship may be implied "when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance. ... In appropriate cases the third element may be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them and the attorney, aware of such reliance, does nothing to negate it." DeVaux v. Am. Home Assur. Co., 444 N. E. 2d 355, 357 (Mass. 1983) (internal

citation omitted).

Plaintiff submitted two affirmations in connection with her opposition to Defendants' motions for summary judgment. Some of the information contained within these affirmations consists of conclusory legal assertions and is inconsistent Plaintiff's own prior deposition testimony. For example, while Plaintiff testified at her deposition that Defendant Tobia had flipped through her screenplay and told her repeatedly "I will see what I can do for you" (see Flaherty Dep. at 291-297), in her affirmation she conclusorily states that Tobia "agree[d] to represent [her] interests" (see Affirmation of Pro Se Plaintiff Marie Flaherty in Opposition to Defendants' Motions for Summary Judgment ("Flaherty Aff.") ¶ 20).[5] To the extent Plaintiff's affirmations conflict with her prior deposition testimony, they will be disregarded. "[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony. . . . Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not "genuine" issues for trial." Hayes v. New York City Dept. of Corrections, 84 F.3d 614, 619 (2d Cir. 1996).

Plaintiff's own proffers establish that the B&L Defendants are entitled to summary judgment as a matter of law on her legal malpractice claim. The uncontroverted record

---

[5]     In her Response to Defendant Tobia and Burns & Levinson's Local Rule 56.1 Statement ("Plaintiff's B&L 56.1 Response"), Plaintiff challenges the accuracy of her deposition transcript. See Plaintiff's B&L 56.1 Response ¶¶ 4, 9, 11, and 13. However, the Plaintiff did not, in accordance with Federal Rule of Civil Procedure 30(e), timely request any corrections to the transcript, even though the Defendants provided her with a copy of the transcript and informed her that any corrections would be due within 30 days. See Reply Decl. Of Jeffrey A. Conciatori, ¶ 13. Thus, her challenge is unavailing. See Margo v. Weiss, 213 F.3d 55, 61 (2d Cir. 2000).

shows that Plaintiff never explicitly requested the attorney to represent her in this matter, never was told that the attorney would protect her interests, and was never billed for any services. Plaintiff's deposition testimony indicates that Plaintiff merely gave Tobia her screenplay and does not suggest any request for legal services. Thus, there is no basis upon which to imply the existence of an attorney-client relationship. See Robertson v. Gaston Snow & Ely Bartlett, 536 N. E. 2d 344, 351 (Mass. 1989). Further, "[Massachusetts] [c]ourts interpreting DeVaux have understood this first prong [of seeking advice or assistance from an attorney] to require concrete communication by the plaintiff requesting that the attorney represent him, or explicitly seeking individualized legal advisement." International Strategies Group, Ltd. v. Greenberg Traurig, LLP, 482 F.3d 1, 8 (1st Cir. 2007); see also Sheinkopf v. Stone, 927 F.2d 1259, 1266-67 (1st Cir.1991) (no implied attorney-client relationship arose under Massachusetts law between an attorney and an investor where the investor bought into a joint investment venture managed by the attorney, even though the attorney prepared various legal documents for the investor's signature and requested that he sign them; promised to "protect" the investor; told the investor that "other clients of [the firm]" were also investing in the venture; listed the firm's address on the joint venture's legal documents; and transacted joint venture business out of his law firm office and with the assistance of his law firm secretary).

        In addition, the uncontroverted evidence establishes that Plaintiff never detrimentally relied on any of Tobia's statements, as she and Tobia did not speak again for six months after the initial meeting in New York at which she gave him the screenplay, then spoke briefly on the phone but did not discuss any purported legal representation, and then did not speak again for three years. During this time, the Plaintiff acknowledges, she was "pitching" her

screenplay to at least 10 different people. (See Flahery Dep. at 48, 332-333.) To the extent

Plaintiff's argument is construed as one that she was relying on Tobia to "pitch" her screenplay

for her, Plaintiff has pointed to no case law that establishes that "pitching" is a legal service that

would be encompassed within the second prong of the De Vaux test. Thus, the B&L Defendants

are entitled to summary judgment dismissing Plaintiff's legal malpractice claim against them.

For substantially the same reasons, the B&L Defendants are also entitled to

summary judgment dismissing Plaintiff's breach of fiduciary duty claim against them (claim 7 of

the SAC), as the uncontroverted evidence establishes that there was no confidential or fiduciary

relationship present here sufficient to support the imposition of such a duty. See The Van Brode

Group, Inc. v. Bowditch & Dewey, 36 Mass. App. Ct. 509, 516 (1994) (noting that, under

Massachusetts law, an attorney only owes a duty of care to a third party non-client if the attorney

knows the non-client is relying on the legal services the attorney is rendering).

Likewise, the B&L Defendants are entitled to summary judgment dismissing

Plaintiff's breach of contract/implied contract claim against them (claim 9 of the SAC).  Plaintiff

alleges that the implied contract here was "that Plaintiff Flaherty's idea would be confidential

based on the confidential and fiduciary relationship created by the parties through Tobia's legal

representation of Flaherty," and, further alleges that this contract arises because Tobia was

"under a legal obligation to treat Flaherty's idea as confidential [as] the legal representation

relationship required that Tobia keep her idea confidential and that she expected to be

compensated and receive screen credit" should her ideas be used to create a motion picture.

(SAC ¶ 197.)  As discussed above, Plaintiff's claims for breach of fiduciary relationship and

legal malpractice fail, as the uncontroverted evidence establishes that there was no legal

representation and no fiduciary relationship. Thus, there was no relationship upon which to imply a contract that Tobia would keep her ideas confidential. None of the elements of an implied contract claim have been made out on the facts before this Court.

### 3. *Plaintiff's Fraud Claim*

Regarding Plaintiff's fraud claim (claim 12 of the SAC), the B&L Defendants argue that Plaintiff has failed to proffer evidence sufficient to satisfy any of the elements of that cause of action. As noted above, to state a cognizable fraud claim, a plaintiff must allege (i) a misrepresentation or omission of a material fact; (ii) which was false and known to be false by defendant; (iii) made for the purpose of inducing plaintiff to rely on it; (iv) justifiable and reasonable reliance on the material misrepresentation or omission; and (v) resulting injury. See Stewart, 2005 WL 66890, at *6.

Here, Plaintiff asserts that Defendant Tobia's alleged statement denying that the script for "Jailbabe.com" was "awfully familiar [sic]" to Flaherty's screenplay was a material falsehood. (SAC ¶ 229). Taking as true Plaintiff's contention that Tobia made the challenged statement and assuming (without deciding the issue) for purposes of this motion practice that the statement was materially false, Plaintiff's attempt to state a viable fraud claim is nonetheless unavailing becaue the alleged statement is one of opinion, not of fact. "Absent special circumstances, the representation must be one of fact and not opinion." Bank of N. Y. v. Realty Group Consultants, 186 A. D. 2d 618, 619 (N.Y. App. Div. 1992).[6] Further, Plaintiff's

---

[6]     Such special circumstances would include, for example, the existence of an employee-employer relationship between the speaker of the fraudulent statement and the plaintiff (see Forest v. Elliott Truck & Tractor Sales, Inc., 29 A.D.2d 1031, 1031-1032 ( N.Y. App. Div. 1968), or the presence of a landlord-tenant relationship and a lease that made certain guarantees (see Municipal Metallic Bed

deposition testimony – that she told a director that film similar to hers may have been sold to Disney – precludes any possibility that Plaintiff could prove that she relied to her detriment on Tobia's allegedly false statement.[7]  Accordingly, the B&L Defendants' motion for summary judgment dismissing Plaintiff's fraud claim against them[8] is granted.

### 4.  *B&L Defendants' Request for Attorneys' Fees*

The B&L Defendants ask the Court to award them reasonable attorneys' fees and costs incurred in responding to what they characterize as Plaintiff's "bad faith" affidavits submitted in opposition to summary judgment.  A court has the inherent power to assess costs and attorneys' fees where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975) (internal citations omitted).  The Second Circuit has made clear that this power should be exercised with restraint and has required a particularized showing of bad faith to justify the use of the court's inherent power; declining to uphold awards under the bad-faith exception absent both "'clear evidence' that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes' " and "a high degree of specificity in the factual findings of [the] lower courts." Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir.1986)

---

Mfg. Corp. v. Dobbs, 171 N. E. 75 (N.Y. 1930).  The record is devoid of evidence of any such special circumstances here.

[7]  Dep. Tr. at 332.

[8]  Though in her SAC Plaintiff only charges that Defendant Tobia made a fraudulent statement, she alleges that he was "working on behalf of and for the benefit of Burns & Levinson" when he made it, and that he would not have succeeded in his fraud "without the active participation and collaboration of Jason Filardi." SAC ¶¶ 233-234.

(citations omitted).

Although the Court believes the Plaintiff may well have engaged in vexatious and delaying motion practice in this case, in light of her pro se status, and because the record does not establish that Plaintiff's affirmations are "entirely without color, and [were made] for reasons of harassment or delay or for other improper purposes," the B&L Defendants' request for attorney's fees and costs is denied.

D.     Remaining Motions and Defendants

1.     *Big House Defendants' Motion for Judgment on the Pleadings*

The Big House Defendants joined the Disney Defendants' summary judgment motion and, in the alternative, moved for judgment on the pleadings. In light of the Court's disposition of the relevant portion of the summary judgment aspect of the motion in Defendants' favor, the motion for judgment on the pleadings is moot and need not be addressed.

## CONCLUSION

For the reasons explained above, the pending applications are resolved as follows. Plaintiff's Rule 56(f) request is denied. The Disney Defendants' and the B&L Defendants' motions for summary judgment (docket entries 157 and 162) are granted except to the extent they seek summary judgment regarding Plaintiff's claim against Defendants Filardi and Tobia that they sold the film production defendants a work that infringed on Plaintiff's screenplay. That element of the summary judgment motion practice will be held in abeyance pending the further submissions described in the next paragraphs. The Big House Defendants' Motion for Judgment

on the Pleadings (docket entry 208) is denied as moot, as its alternative motion for summary judgment has been granted in relevant part.

Defendants Filardi and Tobia are hereby ordered to supplement their evidentiary submissions as to the identity and nature of the screenplay sold by Filardi to Hyde Park. Any such submissions shall be filed with the Court (with a courtesy copy for Chambers) and served on Ms. Flaherty so as to be received by **October 5, 2007**. Ms. Flaherty shall file (with a courtesy copy for Chambers) and serve any such supplemental evidentiary submission so that it is received no later than **October 26, 2007.** Any reply submission shall be served and filed so as to be received by **November 2, 2007.**[9]

The Court is also issuing today a separate Order to Show Cause in this mater.

SO ORDERED.

Dated: New York, New York
       September 17, 2007

                                        LAURA TAYLOR SWAIN
                                        United States District Judge

---

[9]     As noted above, discovery in this case has been closed. No further applications for the reopening of discovery, or for supplemental discovery of any kind, will be entertained. See August 14, 2007 Opinion and Order of Magistrate Judge Pitman.