```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

MARIE FLAHERTY,                     :

                 Plaintiff,         :    03 Civ. 2167 (LTS)(HBP)

    -against-                       :    OPINION
                                         AND ORDER
JASON FILARDI, et al.,              :

                 Defendants.        :

-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I. Introduction

By notice of motion dated August 31, 2007 (Docket Item 243), plaintiff moves for reconsideration of my Opinion and Order dated August 14, 2007 ("August 14 Order") (Docket Item 233). For the reasons set forth below, plaintiff's motion is denied in all respects.

II. Facts

This is a copyright infringement action in which plaintiff, an attorney who is proceeding pro se, claims that the motion picture Bringing Down the House, its screenplay and draft screenplays infringe a screenplay that she authored entitled Amoral Dilemma. Plaintiff's claims are discussed in detail in the opinion of the Honorable Laura Taylor Swain, United States District Judge, granting in part and denying in part defendants'

motion for summary judgment.  Flaherty v. Filardi, 388 F. Supp.2d 274 (S.D.N.Y. 2005).  Familiarity with this decision is assumed.

My August 14 Order, familiarity with which is also assumed, resolved a number of scheduling and discovery disputes. Specifically, the August 14 Order denied plaintiff's applications for the following relief:  (1) an extension of discovery; (2) an extension of the time within which discovery disputes could be raised; (3) to compel defendants to state the basis for a number of objections asserted at the deposition of Jason Filardi; (4) to compel Jason Filardi to answer certain questions posed at his deposition; (5) to compel defendants to produce original documents; (6) to compel defendants' and the Writers Guild of America's production of unredacted financial documents, and (8) for the entry of a default judgment and other sanctions based on defendants' counsels' misconduct at the Filardi deposition and unspecified alleged acts of misconduct.

With one exception discussed below, plaintiff does not cite any facts or legal authorities that I overlooked in my August 14 Order.  Rather, the gravamen of plaintiff's application appears to be her general dissatisfaction with the fact that my August 14 Order denied all of her requests for relief.  Such dissatisfaction, however, is simply not an appropriate basis for reconsideration.

III. Analysis

Motions for reconsideration are appropriate only in limited circumstances.

> Motions for reargument "are granted when new facts come to light or when it appears that controlling precedents were overlooked." Weissman v. Fruchtman, 658 F. Supp. 547 (S.D.N.Y. 1987). The proponent of such a motion is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use [Local Civil Rule 6.3] to advance new facts and theories in response to the court's rulings. The purpose of the rule is "to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Lewis v. New York Telephone, No. 83 Civ. 7129, slip op. at 2, 1986 WL 1441 (S.D.N.Y. 1986) cited in Carolco Pictures Inc. v. Sirota, 700 F. Supp. 169 (S.D.N.Y. 1988).

McMahan & Co. v. Donaldson, Lufkin & Jenrette Sec. Corp., 727 F. Supp. 833, 833 (S.D.N.Y. 1989); see also Mahmud v. Kaufmann, 496 F. Supp.2d 266, 269-70 (S.D.N.Y. 2007). "A movant for reconsideration bears the heavy burden of demonstrating that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." Quinn v. Altria Group, Inc., 07 Civ. 8783 (LTS)(RLE), 2008 WL 3518462 at *1 (S.D.N.Y. Aug. 1, 2008), citing Virgin Airways v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992).

"[T]o be entitled to reargument under Local [Civil Rule 6.3, a party] must demonstrate that the Court overlooked control-

3

ling decisions or factual matters that were put before the Court on the underlying motion." Am. Alliance Ins. Co. v. Eagle Ins. Co., 163 F.R.D. 211, 213 (S.D.N.Y. 1995), rev'd on other grounds, 92 F.3d 57 (2d Cir. 1996), citing Ameritrust Co. Nat'l Ass'n v. Dew, 151 F.R.D. 237, 238 (S.D.N.Y. 1993); Fulani v. Brady, 149 F.R.D. 501, 503 (S.D.N.Y. 1993), aff'd sub nom., Fulani v. Bentsen, 35 F.3d 49 (2d Cir. 1994); East Coast Novelty Co. v. City of New York, 141 F.R.D. 245, 245 (S.D.N.Y. 1992); B.N.E. Swedbank, S.A. v. Banker, 791 F. Supp. 1002, 1008 (S.D.N.Y. 1992); Novak v. Nat'l Broad. Co., 760 F. Supp. 47, 48 (S.D.N.Y. 1991); Ashley Meadows Farm, Inc. v. Am. Horse Shows Ass'n, 624 F. Supp. 856, 857 (S.D.N.Y. 1985). Thus, "a party in its motion for reargument 'may not advance new facts, issues or arguments not previously presented to the court.'" In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig., 850 F. Supp. 1105, 1151 (S.D.N.Y. 1994), quoting Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc., 86 Civ. 6447 (JMC), 1989 WL 162315 at *4 (S.D.N.Y. Aug. 4, 1989), rev'd on other grounds, 967 F.2d 742 (2d Cir. 1992); accord Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp., 948 F.2d 111, 115 (2d Cir. 1991); see also Woodard v. Hardenfelder, 845 F. Supp. 960, 966 (E.D.N.Y. 1994). A party should not use a motion for reconsideration "to reargue those issues already considered when a party does not like the

way the original motion was resolved." In re Houbigant, Inc., 914 F. Supp. 997, 1001 (S.D.N.Y. 1996).

Plaintiff asserts six purported bases for reconsideration. None are meritorious.

A. Simultaneous Consideration of

   Multiple Applications for Relief

Plaintiff first claims that

> [b]y ruling simultaneously, after a delay of over a year, on an August 2006 motion to compel discovery and an August 2006 motion to extend the discovery cut-off date while at the same time ruling on an October 2006 Motion for a Default Judgment which clearly was affected by the August 2006 motions, the Court has depriving [sic] a pro se Plaintiff of her right to seek alternative relief concerning the August 2006 Motions *prior* to the ruling on the October 2006 Motion, resulting in manifest injustice.

(Pro Se Plaintiff Marie Flaherty's memorandum of law in Support of Plaintiff's Motion for Reconsideration of the Magistrate Court's August 14, 2007 Order Entered August 16, 2007, dated August 30, 2007 (Docket Item 237) ("Plaintiff's Mem."), at 1).

My August 14 Order addressed all the scheduling and discovery motions that were pending at that time. Plaintiff cites no controlling precedent concerning the order in which discovery and scheduling motions should be decided, nor does she cite any facts bearing on the decision that were called to my

attention and that I failed to consider.  Thus, plaintiff has failed to demonstrate that reconsideration is appropriate.

In addition, my considering all pending motions simultaneously did not result in manifest injustice.  Although plaintiff asserts that my ruling simultaneously on all pending motions "depriv[ed] [her] of her right to seek alternative relief concerning the August 2006 Motions *prior* to the ruling on the October 2006 Motion, resulting in manifest injustice" (Plaintiff's Mem. at 1), this argument is flawed on its face.  First, it is self-evident that when a court rules on a motion, consideration of the motion is ended; if a motion is denied, the unsuccessful litigant has no "right" to reassert the motion seeking "alternative relief."  Plaintiff cites no authority for this putative "right" to seek "alternative relief" and I am aware of none.  See generally de los Santos v. Fingerson, 97 Civ. 3972 (MBM), 1998 WL 788781 at *1 (S.D.N.Y. Nov. 12, 1998) (A judicial decision is not "the opening of a dialogue in which that party may then use [a motion for reconsideration] to advance new theories or adduce new evidence in response to the court's rulings.")

Second, plaintiff claims that my considering all pending motions simultaneously deprived her of the ability to file objections to my discovery ruling prior to the decision on her application for a default judgment and other sanctions,

thereby depriving her of due process (Plaintiff's Mem. at 2). Again, plaintiff's argument is without merit. Plaintiff was free to object to my August 14 Order in whole or in part and was free to argue that a putative error in one aspect of the decision affected other aspects of the decision. There was nothing about my simultaneous consideration of multiple applications that prevented plaintiff from being heard.

To the extent plaintiff objects to the time it took to resolve her August 2006 motions, that delay, although unfortunate, does not affect the merits of my decision.

Plaintiff also makes a number of other, unrelated arguments under this point heading such as that I made arguments for defendants that they did not make and that I improperly failed to consider unidentified "litigation misconduct" on the part of the defendants. Plaintiff does not identify the arguments she claims that I made on behalf of the defendants, nor does she identify the "litigation misconduct" on which she relies. I do not know what arguments or alleged misconduct she is referring to. Reconsideration based on such vague generalities is inappropriate; as noted above, reconsideration is appropriate when controlling facts are overlooked. In addition, although plaintiff makes a vague reference to her alleged entitlement to a default judgment pursuant to 28 U.S.C. § 1927 and

7

the court's inherent power, she doesn't remotely approach the showing required for relief under either theory.

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "This provision 'imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics' and applies only to attorneys. The purpose of § 1927 is to deter unnecessary delays in ligation by penalizing attorneys personally." Nike, Inc. v. Top Brand Co., 216 F.R.D. 259, 275-76 (S.D.N.Y. 2003) quoting Bowler v. U.S. Immigration & Naturalization Serv., 901 F. Supp. 597, 604 (S.D.N.Y. 1995); see also Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78-79 (2d Cir. 2000).

A showing of bad faith is required to impose sanctions under Section 1927. Revson v. Cinque & Cinque, P.C., supra, 221 F.3d at 79; Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986) ("Imposition of a sanction under § 1927 requires a clear showing of bad faith." (internal quotation omitted)). "Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have

been undertaken for some improper purpose such as delay." Oliveri v. Thompson, supra, 803 F.2d at 1273 (citation omitted). Courts may also punish improper conduct pursuant to an inherent power that stems from the courts' need "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). "One component of a court's inherent power is the power to assess costs and attorneys' fees against either the client or his attorney where a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991) quoting F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 129 (1974). The Supreme Court cautioned the courts to exercise this highly potent power "with restraint and discretion." United States v. Int'l Bhd. of Teamsters, supra, 948 F.2d at 1345 quoting Chambers v. NASCO, Inc., supra, 501 U.S. at 44.

In order to impose sanctions against counsel under either Section 1927 or the court's inherent power, the court must find, with a "high degree of specificity," that the circumstances of their conduct constitute clear evidence that their claims were instituted and/or continued in bad faith. Oliveri v. Thompson, supra, 803 F.2d at 1272, quoting Dow Chem. Pac., Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 344 (2d Cir. 1986). Bad faith may

9

be found where the conduct at issue is "entirely without color" and was taken "for reasons of harassment or delay or for other improper purposes." Oliveri v. Thompson, supra, 803 F.2d at 1272, quoting Dow Chem. Pac., Ltd. v. Rascator Maritime S.A., supra, 782 F.2d at 344. A claim has color "when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." Revson v. Cinque & Cinque, P.C., supra, 221 F.3d at 79, quoting Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir. 1980) (per curiam). Thus, for a court to impose sanctions under Section 1927 or the court's inherent powers, the court must find "clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." Revson v. Cinque & Cinque, P.C., supra, 221 F.3d at 79, quoting Agee v. Paramount Communications, Inc., 114 F.3d 395, 398 (2d Cir. 1997).

  Given the requirement that an award of sanctions under either the court's inherent power or Section 1927 requires specific allegations of misconduct and specific factual findings, Sakon v. Andreo, 119 F.3d 109, 114 (2d Cir. 1997), plaintiff's "back of the hand" assertion that I overlooked her putative entitlement to relief under either of these doctrines -- unsupported either here or in the original motion by specific allegations of misconduct -- is baseless.

B. Alleged Error Concerning Plaintiff's
   Application for a Default Judgment

Plaintiff next argues that

> Plaintiff's motion for a Default Judgment should not have been characterized as a soely [sic] a discovery motion, since pro se Plaintiff moved for a Default Judgment concerning the litigation misconduct in general, which is not subject to any deadlines.

(Plaintiff's Mem. at 3).

The nature of plaintiff's argument here is unclear. First she seems to suggest that I erred in noting that her October 2006 motion for a default judgment was untimely because, according to plaintiff, it was not a discovery motion. Regardless of the accuracy of plaintiff's contention, I rejected her motion for a default judgment primarily because it failed on the merits. Thus, whether the motion was characterized as a Rule 37 motion or something else is immaterial. Plaintiff does not cite any relevant facts or law that were called to my attention that I overlooked.

In connection with this argument, plaintiff cites certain unfortunate events that have occurred in her personal life while this litigation has been pending, such as the death of her father and her involvement with the victim of a traffic accident during the victim's final moments of life. Although these events were, no doubt, traumatic for plaintiff, they are

11

entirely immaterial to plaintiff's application for the entry of a default judgment against defendants.

In connection with this argument, plaintiff also raises an argument -- not raised in her motion for a default judgment -- that she is entitled to compensation for the waste of her time resulting from the misconduct of defendants' counsel at the Filardi deposition. Plaintiff cites no controlling authority for this proposition, and appears to overlook the principle that attorney's fees are not generally recoverable by a pro se litigant, even if the litigant is an attorney. See generally Kay v. Ehrler, 499 U.S. 432 (1991) (successful attorney/pro se litigant not entitled to recover attorney's fees pursuant to 42 U.S.C. 1988); S.N. v. Pittsford Cent. Sch. Dist., 448 F.3d 601, 603-04 (2d Cir. 2006).

Finally, to the extent plaintiff claims that I overlooked her possible entitlement to a default judgment on the basis of some legal theory other than Federal Rule of Civil Procedure 37, her arguments are addressed in the preceding section.

C. Alleged Failure to
Consider Plaintiff's
<u>Discovery Applications</u>

In her third point, plaintiff states

This Magistrate Court misstated and overlooked the facts in this case including the fact that Plaintiff did file a motion to compel discovery which resulted in this Court's October 2006 Order compelling Defendants to respond to Plaintiff's 2003 initial discovery requests, and <u>pro se</u> Plaintiff did contact Chambers during the abusive deposition [in the morning] and informed the Court, repeatedly and immediately upon her return to NYC. [See Exhibits ].

(Plaintiff's Mem. at *4). Despite plaintiff's reference to exhibits, she submitted none with her papers.

The Docket Sheet in this matter does not reflect any October 2006 Order compelling defendants to make discovery. Thus, the factual premise for this aspect of plaintiff's motion is non-existent.

As to plaintiff's claim that I overlooked the fact she called my chambers for a ruling during the Filardi deposition, I have no record of such a call nor does the transcript of the deposition reflect such a call. Given the volume of business in my chambers, I cannot confirm or deny that such a call was received.[1] Nevertheless, assuming that the call referenced by

---

[1] Except for conferences concerning settlement, I ordinarily tape record, with express notice to all parties, all conference calls with counsel or <u>pro</u> <u>se</u> parties. I have no recordings of any calls placed in this matter on the date of the Filardi deposition.

13

plaintiff was made, the existence of a single call to chambers during the Filardi deposition would not have changed the result of any of the motions resolved by my August 14 Order. My principal reason for not extending discovery was plaintiff's failure to pursue discovery during the first half of 2006. My principal reason for denying plaintiff's application for a default judgment was my conclusion that, based on my review of the entire transcript, the conduct of defense counsel, although flawed, did not essentially destroy the deposition. The existence of a single call to chambers during the deposition could not have altered this result.

### D. My Order to Plaintiff to State the Reasons for Her Discovery Demands

In her fourth point plaintiff argues

> The Magistrate Court's demand that pro se Plaintiff give reasons for her discovery request [sic] is manifestly unjust and contrary to Plaintiff's due process rights pursuant to Rule 26, in light of the fact that Defendants have never made a motion for a protective order outlining why they refuse to comply with discovery requests -- instead, defendant just ignored and refused to respond.

(Plaintiff's Mem. at 5).

Plaintiff's argument here appears to refer to the direction in my July 25, 2006 Order (Docket Item 150) which required, among other things, that

14

> 2. If any party has any dispute with respect to any discovery responses served to date, such disputes are to be raised by letter or motion no later than August 14, 2006. Any applications made pursuant to this paragraph shall either include or quote the discovery request(s) and response(s) in issue and shall identify specifically the alleged deficiencies in the response.

In reliance on the foregoing paragraph, my August 14 Order denied a number of plaintiff's applications to compel discovery on the ground that she offered no explanation for the discovery she was seeking.

It is readily apparent that essential components of a reasoned discovery decision include an explanation from the party seeking discovery why the discovery in issue is appropriate and an explanation from the party opposing discovery why it is refusing to produce the information sought. Contrary to plaintiff's contention that she was denied Due Process, my July 25 Order expressly directed that she explain her arguments, and, as set forth in my August 14 Order, I gave plaintiff three times the amount of time she requested to do so. The rationale for my July 25 Order was simple -- I did not want to guess at what plaintiff's arguments were and I wanted to ensure that I understood plaintiff's theories concerning the discovery materials she sought. Moreover, given the fact that plaintiff is an attorney and a member of the bar of this court, asking her to explain her requests did not impose a substantial burden on her. Inexplicably, plaintiff discarded the opportunity to be heard, and,

15

therefore, her discovery application was denied. My decision was not contrary to any controlling precedent and was not, by any stretch of the imagination, "manifestly unjust."

    E.    Alleged Failure to
          Consider Plaintiff's
          <u>Attempts to Conduct Discovery</u>

In her fifth point, plaintiff asserts

> The Magistrate Court erred by refusing to consider Pro se Plaintiff's exhaustive attempts to obtain the initial discovery requests during the 7 months this Court gave her to conduct discovery of 11 defendants - in which Defendants and their attorneys refused to even speak to pro se Plaintiff about discovery issues and in fact Mr. Muldoon even directed other attorneys to stop speaking to Plaintiff about discovery.

(Plaintiff's Mem. at 7).

Plaintiff's argument here borders on the fanciful. At a conference held in this matter on July 26, 2006, plaintiff admitted that she had not served any discovery requests in the seven month period preceding the conference.[2] She also admitted

---

[2]At the July 24, 2006 conference, the following exchange took place with plaintiff:

> THE COURT: As near as I can tell, I don't think any discovery -- has any discovery taken place between January and today? Have you served any requests after January?
>
> MS. FLAHERTY: <u>No, no.</u>
>
> THE COURT: Why not?
>
> MS FLAHERTY: Well, expense-wise --
>                                       (continued...)

16

that she had not made any motions or informal applications to compel discovery.[3] Despite this record of inactivity, I gave

---

[2](...continued)
>    THE COURT: Yeah, but the expense of drafting a request and serving a request is your time to write it, type it --
>
>    MS. FLAHERTY: Yes, but --
>
>    THE COURT: -- and throw it in the mail.

(Transcript of July 24, 2006 Conference at 8 (emphasis added); see also Transcript of July 24, 2006 conference at 14-16 (I invited plaintiff to call to my attention any pending discovery disputes she raised with the court in any way and she was unable to do so)).

[3]Again, plaintiff's own statements contradict the arguments she now asserts:

>    THE COURT: Well, until someone makes an application concerning a discovery request, the Court doesn't issue orders. I mean, the Court does not sua sponte issue orders on discovery.
>
>    MS. FLAHERTY: Well, I've asked for hearings and during some hearings the defendant[s] have -- in a phone call defendants have received orders for me to give them certain documents. I --
>
>    THE COURT: Well, you know, I've reviewed the correspondence in the file this morning. As near as I can tell, apart from the motion to strike the designations of confidentiality, there is no specific application pending in the correspondence or in the motion papers that I see made by you where you, in effect, say I want Category A of documents --
>
>    MS. FLAHERTY: Well, I --
>
>    THE COURT: -- Category B of documents, Category C and defendants refuse to give them to me.
>
>    MS. FLAHERTY: All right. Well, I --
>                                              (continued...)

plaintiff three weeks from the July 24, 2006 conference to raise any discovery disputes she had. The application that she made did not cite any history of frustrated efforts to obtain discovery. Quite simply, I did not ignore any history of efforts to obtain discovery because there was no such history to ignore. Although plaintiff's motion for reconsideration refers to "exhaustive efforts" to obtain discovery, the record simply does not support this claim. Plaintiff's August 14, 2006 letter did not recount any history of "exhaustive efforts" to obtain discovery.

    F.    Alleged Unfairness of
           Requiring an Attorney
           Proceeding Pro Se to
           Explain the Basis of
           <u>Her Discovery Requests</u>

       Plaintiff's sixth and final point is largely a rehash of her fourth point. Specifically, plaintiff claims that

---

[3](...continued)
        THE COURT: I mean, that's how you tee up a discovery dispute.

        MS. FLAHERTY: Okay. <u>Well, I've tried to do it without court intervention</u>. I have been -- I have given them the benefit of the doubt for some documents waiting for Judge Swain's motion for reconsideration, but I will now that you have extended the deadline for dispositive motions and other motions, I will go to the expense of making those motions for simple documents . . . such as screenplays that are at issue in this case, but I will do that.

(Transcript of July 24, 2006 conference at 9-10 (emphasis added)).

18

> Pro se Plaintiff did specifically identify documents
> and answers she sought production of [she highlighted
> specific questions]. Further, to again, require a pro
> se Plaintiff to set forth the basis to compel, where
> case law specifically states that an absolute refusal
> to make any response is sanctionable, and where plain-
> tiff sought sanctions for failure to comply with this
> Court's October 2005 Order, is, again, an unreasonable
> and unjust demand and obstacle placed on a pro se
> Plaintiff.

(Plaintiff's Mem. at 9).

Although plaintiff here stresses the fact that she is proceeding pro se, she entirely omits the fact that she is a licensed attorney, admitted to practice before the state courts of New York and admitted to practice in this court. As such, she is not entitled to the leniency that a non-attorney pro se routinely receives. Harbulak v. County of Suffolk, 654 F.2d 194, 198 (2d Cir. 1981); Fenstermaker v. Bush, 05 Civ. 7468 (RMB), 2007 WL 1705068 at *4 (S.D.N.Y. June 12, 2007). Cf. Smith v. New York Presbyterian Hosp., 254 Fed. Appx. 68, 70 (2d Cir. 2007) (affording leniency to attorney proceeding pro se where attorney had not practiced for years due to psychiatric impairments that were the basis for his ADA claim).

IV. Conclusion

Accordingly, for all the foregoing reasons, plaintiff's motion for reconsideration of my August 14, 2007 Opinion and Order (Docket Item 243) is denied in all respects.

Dated:  New York, New York
        September 12, 2008

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies mailed to:

Marie Flaherty, Esq.
Apt. 12G
1 Stuyvesant Oval
New York, New York  10009

Jeffrey A. Conciatori, Esq.
Quinn Emanuel Urquhart
  Oliver & Hedges, LLP
22nd Floor
51 Madison Avenue
New York, New York  10010

Robert J. Muldoon, Esq.
Sherin & Lodgen LLP
101 Federal Street
Boston, Massachusetts  02110